UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BARBARA KING** | **CIVIL ACTION** |
| **VERSUS** | **NO: 10-3395** |
| **LIBERTY MUTUAL FIRE INSURANCE COMPANY** | **SECTION: "S" (5)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that Liberty Mutual Fire Insurance Company's Motion for Partial Summary Judgment on Plaintiff's Unfair Trade Practices and Discrimination Claims (Doc. #27) is **GRANTED** as unopposed, and plaintiff's unfair trade practices and discrimination claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Liberty Mutual Fire Insurance Company's Motion for Partial Summary Judgment Regarding Plaintiff's Mold Claims (Doc. #28) is **GRANTED**, and plaintiff's claims for mold damage in excess of $5,000 are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the following motions are rendered moot by the court's ruling that plaintiff's recovery for mold damage is limited to $5,000:

(1) Liberty Mutual Fire Insurance Company's Motion to Strike Untimely Reports of Plaintiff's Expert James Conn (Doc. #29);

(2) Plaintiff's Motion to Extend Deadlines to Supplement Expert Reports (Doc. #33);

(3) Liberty Mutual Fire Insurance Company's Motion to Strike Untimely Reports of Plaintiff's Expert Michael Gurtler (Doc. #42);

(4)    Plaintiff's Motion for Leave to Supplement Witness and Exhibit List (Doc. #46).

**BACKGROUND**

Plaintiff, Barbara King, owed a home located at 3602 Thomas Drive, Houma, Louisiana. On September 1, 2008, plaintiff's home sustained wind and wind-driven rain damage as a result of Hurricane Gustav. At the time of the storm, plaintiff's property was insured under a homeowners insurance policy issued by Liberty Mutual Fire Insurance Company that had limits of $206,100 for dwelling coverage, $20,610 for other structures, $103,500 for personal property, and $41,220 for loss of use. Plaintiff reported her damages to Liberty, and Liberty began the claims adjustment process.

On October 21, 2008, after its initial inspection of plaintiff's property, Liberty paid plaintiff $3,621.61 for damages to her residence and $500 for personal property losses. In 2010, Liberty paid plaintiff an additional $13,656.61 for damages to her residence and an additional $5,082.14 for personal property losses.

Plaintiff filed this action against Liberty on August 21, 2010, in the 32nd Judicial District Court for the Parish of Terrebonne, State of Louisiana. Thereafter, Liberty removed the action to the United States District Court for the Eastern District of Louisiana.

In her petition, plaintiff alleges that Liberty breached the insurance contract by failing to pay adequate amounts to cover her losses. Specifically, plaintiff alleges that Liberty failed to account for increases in construction costs associated with Hurricane Gustav. Plaintiff also alleges that Liberty acted in bad faith in adjusting her claim pursuant to Louisiana Revised Statues §§ 22:1892

and 22:1913,[1] and therefore the claim for mold damages is not limited to the policy limit for mold damage.

**ANALYSIS**

**A.      Summary Judgment Standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**B.      Liberty's Motion for Partial Summary Judgment on Plaintiff's Mold Claims (Doc. #28)**

Liberty Mutual filed a motion for partial summary judgment on plaintiff's mold claims. Liberty argues that plaintiff's homeowners insurance policy unambiguously excludes coverage for

---

[1]      On January 1, 2009, Louisiana Revised Statutes §§ 22:658 and 22:1220 were renumbered sections 22:1892 and 22:1973, respectively.

damage caused by mold, regardless of its cause. Liberty also argues that plaintiff has not presented any evidence that her property has mold damage caused by Hurricane Gustav, that Liberty acted in bad faith, or that Liberty's bad faith resulted in mold damage.

The interpretation of an insurance contract is a question of law. See Jarvis Christian Coll. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 197 F.3d 742,746 (5th Cir. 2000). Under Louisiana law, the general rules of contract interpretation apply to determine the common intent of the parties to the contract. See Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 630 So.2d 759, 763 (La.1994). The intent of the parties as reflected in the policy determines the extent of the coverage. Id. The words of an insurance policy are given their "general, ordinary, plain, and proper meaning ... unless [they] have acquired a technical meaning." Id.

When the language is clear and unambiguous, it must be enforced as written. See Reynolds v. Select Props. Ltd., 634 So.2d 1180, 1183 (La.1994). "When the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE art. 2046. "A contract provision is not ambiguous where only one of two competing interpretations is reasonable or merely because one party can create a dispute in hindsight." Amoco Prod. Co. v. Tx. Meridian Res. Exploration Inc., 180 F.3d 664, 668-69 (5th Cir. 1999) (quoting Tx. E. Transmission Corp. v. Amerada Hess Corp., 145 F.3d 737, 741 (5th Cir. 1998)) (internal quotation marks omitted). If there is an ambiguity in the policy of insurance, the ambiguous provision is construed against the insurer because it is the party who furnished the text. LA. CIV.CODE ANN. art. 2056.

Plaintiff's homeowners insurance policy contains an amendatory mold, fungus, wet rot, dry rot or bacteria endorsement. The endorsement defines "Mold, Fungus, Wet Rot, or Dry Rot" as "any type or form of fungus, or rot" including "mold, mildew and any mycotoxins, spores, scents or byproducts produced or released by mold, mildew, fungus, or rot." "Bacteria" is defined as "any type of bacteria" including "other microbes or byproducts produced or released by bacteria." The endorsement provides additional coverage for up to $5,000 of for the "Remediation" of "Mold, Fungus, Wet Rot, or Dry Rot" or "Bacteria" per policy period regardless of the number of water damages losses or claims submitted. The limited mold coverage endorsement does not increase the policy limits of liability. "Remediation" is defied as follows:

> The reasonable and necessary treatment, containment, decontamination, removal or disposal of "Mold, Fungus, Wet Rot, or Dry Rot" or "Bacteria" as required to complete the repair or replacement of the property, covered under Section I of the policy, that is damaged by a covered water loss. "Remediation" includes "payments for any loss of fair rental value, or reasonable increase in additional living expenses that is necessary to maintain your normal standard of living, if "Mold, Fungus, Wet Rot, or Dry Rot" or "Bacteria" resulting from a covered water loss makes your residence premises uninhabitable. "Remediation" includes testing or investigation to detect, evaluate or measure "Mold, Fungus, Wet Rot, or Dry Rot" or "Bacteria".

The endorsement also adds exclusion 1.i. to the policy, which provides:

> We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
>
> i. "Mold, Fungus, Wet Rot, or Dry Rot" or "Bacteria", meaning the presence, growth, proliferation or spread of "Mold, Fungus, Wet Rot or Dry Rot" or "Bacteria".

5

> This exclusion does not apply:
>
> (1) to the extent coverage is provided for in Additional Coverage 11. Remediation of "Mold, Fungus, Wet Rot, or Dry Rot" or "Bacteria" Resulting Directly From A Covered Water Loss
>
> (2) with respect to "Mold, Fungus, Wet Rot, or Dry Rot" or "Bacteria" that is located on the portion of the covered property that must be repaired or replaced because of direct physical damage caused by a Peril Insured Against.
>
> However, the exclusion shall continue to apply to:
>
> (a) the cost to treat, contain, decontaminate, remove or dispose of "Mold, Fungus, Wet Rot, or Dry Rot" or "Bacteria" beyond that which is required to repair or replace the covered property physically damaged by a Peril Insured Against.
>
> (b) the cost of any testing of air or property to confirm the absence, presence or level of "Mold, Fungus, Wet Rot, or Dry Rot" or "Bacteria" whether performed prior to, during or after removal, repair, restoration or replacement, and
>
> (c) any increase in loss under Coverage D – Loss of Use and Additional Coverage 1. Debris Removal resulting from (2)(a) and (b).

Plaintiff's homeowner's insurance policy unambiguously excludes coverage for mold damage, with the exception of $5,000 for the "Remediation" of "Mold, Fungus, Wet Rot, or Dry Rot" or "Bacteria" per policy period. Therefore, plaintiff's coverage for mold damage under the policy is limited to $5,000.

Plaintiff contends that she is able to collect for all mold damages because the mold damage occurred as a result of Liberty's bad faith. She argues that the mold grew because Liberty was in

bad faith in adjusting her claim and did not pay the amounts required for the necessary repairs to prevent mold growth.

La. Rev. Stat. § 22:1973(A) provides:

> An insurer . . . owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

An insurer can breach its duty of good faith and fair dealing under La. Rev. Stat. § 22:1973(A) by failing to pay a claim within 60 days following receipt of satisfactory proof of loss if that failure is arbitrary, capricious, or without probable cause. Id. To recover damages for an insurer's arbitrary and capricious failure to timely pay a claim under La. Rev. Stat. § 22:1973(A) the "plaintiff has the burden of proving that his insurer (1) received satisfactory proof of loss, (2) failed to pay within the required time, and (3) acted in an arbitrary and capricious manner." Dickerson v. Lexington Insurance Co., 556 F.3d 290, 297 (5th Cir. 2009). The plaintiff must also prove that the damages resulted from the insurer's bad faith. See Bennett v. Laperouse and Son, Ltd., 35 So.3d 364, 368 (La. Ct. App. 2010) (citing Sultana Corp v. Jewelers Mut. Ins. Co., 860 So.2d 1112, 1118 (La. 2003)). Courts interpret the phrase "arbitrary and capricious" as synonymous with vexatious, and a "vexatious refusal to pay means unjustified, without reasonable or probable cause or excuse." Dickerson, 556 F.3d at 297. "An insurer does not act arbitrarily and capriciously, however, when it withholds payment based on a genuine (good faith) dispute about the amount of a loss or the applicability of coverage." Id.

Plaintiff has not presented any evidence that Liberty breached its duty of good faith and fair dealing imposed under La. Rev. Stat. § 22:1973(A) by arbitrarily and capriciously failing to pay her claim within 60 days after Liberty Mutual received a satisfactory proof of loss, nor has plaintiff presented any evidence that the mold damage was the result of Liberty's bad faith.  Instead, plaintiff relies on conclusory allegations that Liberty acted in bad faith, which caused her mold damage, which are insufficient to overcome a motion for summary judgment.  Therefore, Liberty's motion for partial summary judgment regarding plaintiff's mold claims is GRANTED, and plaintiff's claims for mold damage in excess of $5,000 are **DISMISSED WITH PREJUDICE.**

## CONCLUSION

**IT IS HEREBY ORDERED** that Liberty Mutual Fire Insurance Company's Motion for Partial Summary Judgment on Plaintiff's Unfair Trade Practices and Discrimination Claims (Doc. #27) is **GRANTED** as unopposed, and plaintiff's unfair trade practices and discrimination claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Liberty Mutual Fire Insurance Company's Motion for Partial Summary Judgment Regarding Plaintiff's Mold Claims (Doc. #28) is **GRANTED**, and plaintiff's claims for mold damage in excess of $5,000 are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the following motions are rendered moot by the court's ruling that plaintiff's recovery for mold damage is limited to $5,000:

(1)   Liberty Mutual Fire Insurance Company's Motion to Strike Untimely Reports of Plaintiff's Expert James Conn (Doc. #29);

(2)   Plaintiff's Motion to Extend Deadlines to Supplement Expert Reports (Doc. #33);

(3) Liberty Mutual Fire Insurance Company's Motion to Strike Untimely Reports of Plaintiff's Expert Michael Gurtler (Doc. #42);

(4) Plaintiff's Motion for Leave to Supplement Witness and Exhibit List (Doc. #46).

New Orleans, Louisiana, this   21st  day of June, 2011.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**